## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CHRISTIAN JUGO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SALESLOFT, INC., and APPFOLIO, INC., <br><br> Defendants. | Civil Action No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Christian Jugo ("Plaintiff") brings this Class Action Complaint on behalf of himself, and all others similarly situated, against Defendants Salesloft, Inc. ("Salesloft") and AppFolio, Inc. ("AppFolio")(Collectively, the "Defendants"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge:

## <u>NATURE OF THE CASE</u>

1.    Plaintiff brings this class action against Defendants for their collective failure to properly secure and safeguard Plaintiff's and other similarly situated individuals ("Class Members") personally identifying information, including names,

addresses, dates of birth, and Social Security numbers (collectively "PII" or "Private Information").[1]

2.    Plaintiff and Class Members are individuals who were required to indirectly and/or directly provide Defendants with their Private Information. By collecting, storing, and maintaining Plaintiff's and Class Members' Private Information, Defendants had a resulting duty to secure, maintain, protect, and safeguard the Private Information that they collect and store against unauthorized access and disclosure through reasonable and adequate data security measures.

3.    Despite Defendants' duty to safeguard the Private Information of Plaintiff and Class Members, their Private Information in Defendants' possession was compromised when an unauthorized party gained access to Salesloft's system and AppFolio's Customer Relationship Management ("CRM") system and exfiltrated sensitive data stored therein on or about August 8, 2025 (the "Data Breach").[2]

4.    The Data Breach occurred when cybercriminals infiltrated Defendants' inadequately protected network servers and accessed highly sensitive PII that was being kept therein.

---

[1] *Data Breach Notifications*, Office of the Maine Attorney General. https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/558113e2-5f95-4f04-ae80-27f404d3ac47.html (last visited October 23, 2025).
[2] *Id.*

5.    After AppFolio discovered the Data Breach on or about August 22, 2025, it conducted an investigation which determined that some data may have been acquired.[3]

6.    While AppFolio claims to have discovered the breach as early as August 22, 2025, AppFolio did not inform victims of the Data Breach until October 6, 2025. Indeed, Plaintiff and Class Members were wholly unaware of the Data Breach for months until they received letters from AppFolio informing them of it.

7.    Indeed, it was not until on or around October 6, 2025 that Plaintiff received a letter from AppFolio notifying him for the first time of the Data Breach and theft of his PII.[4]

8.    Defendants maintained the PII of Plaintiff and Class Members in a negligent and/or reckless manner. In particular, the PII was maintained on Defendants' computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendants, and thus Defendants were on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

---

[3] *Id.*
[4] *See* October 6, 2025 AppFolio letter of breach to Plaintiff (attached hereto as "Exhibit A").

9.     Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

10.     As a result, Plaintiff's and Class Members' PII was compromised by an unauthorized third-party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

11.     As a direct and proximate result of Defendants' failure to implement and follow basic security procedures, Plaintiff's and Class Members' Private Information is now in the hands of cybercriminals.

12.     Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, intrusion of their, and similar forms of criminal mischief, risk which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

13.     Plaintiff, on behalf of himself and all others similarly situated, alleges claims for negligence, breach of implied contract, unjust enrichment and declaratory

judgment arising from the Data Breach. Plaintiff seeks damages and injunctive relief, including the adoption reasonably sufficient practices to safeguard the Private Information in Defendants' custody to prevent incidents like the Data Breach from recurring in the future, and for Defendants to provide identity theft protective services to Plaintiff and Class Members for their lifetimes.

## PARTIES

14.    Plaintiff Christian Jugo is an adult, who at all relevant times, was a resident and citizen of the State of Nevada. Plaintiff received a data breach notice informing him that his Private Information indirectly and/or directly provided to AppFolio was compromised during the Data Breach. [5]

15.    Plaintiff has suffered actual injury from having his Private Information exposed and/or stolen as a result of the Data Breach, including: (a) required mitigation efforts, including researching the Data Breach and needing to monitor his financial statements to ensure his information is not used for identity theft and fraud; (b) damages to and diminution of the value of his Private Information, a form of intangible property that loses value when it falls into the hands of criminals; (c) loss of privacy; and (d) continuous imminent and impending injury raising from increased risk of financial identity theft and fraud.

---

[5] *Id.*

16.    As a result of the Data Breach, and the sensitivity of the Private Information compromised, Plaintiff will continue to be at a substantial and certainly impending risk for fraud and identity theft, and their attendant damages, for years to come.

17.    Defendant Salesloft, Inc., is a Delaware corporation with its principal place of business located in Atlanta, Georgia.

18.    Defendant AppFolio, Inc. is a Delaware corporation with its principal executive office located at 70 Castilian Drive, Goleta, California 93117.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendants.[6]

20.    This Court has personal jurisdiction over Defendant AppFolio because it has substantial contacts within this State and has engaged in business here on a continuous and systematic basis, including entering into contracts with Georgia-headquartered Salesloft from which Plaintiff's claims in this matter arise.

---

[6] *See* 28 U.S.C. § 1332(d)(10) (stating that for purposes of CAFA jurisdiction, an unincorporated association deemed to be citizen of State where it has its principal place of business and under whose laws it is organized).

21.    This Court has personal jurisdiction over Defendant Salesloft because it resides in this District, and a substantial part of the events, omissions, and acts giving rise to the claims herein occurred herein.

22.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant Salesloft resides in this District.

## FACTUAL BACKGROUND

23.    Defendant AppFolio provides cloud-based software solutions designed to help property management and legal professionals manage their business operations, including accounting, marketing, leasing, and maintenance functions.

24.    Defendant Salesloft, Inc. is an AI-powered revenue orchestration platform that provides sales engagement tools to help sales teams at many companies, including AppFolio.

25.    Plaintiff and Class Members are and/or were customers of AppFolio.

26.    As a condition of obtaining AppFolio's services, Plaintiff and Class Members directly or indirectly entrusted AppFolio with their sensitive Private Information

27.    AppFolio, in turn, provided Plaintiff's and Class Members' PII to Salesloft in connection with the use of Salesloft's sales platform.

28.    Plaintiff and Class Members value the confidentiality of their Private Information and, according, have taken reasonable steps to maintain the confidentiality of their Private Information.

29.    In entrusting their Private Information to Defendants, Plaintiff and Class Members reasonably expected that Defendants would safeguard their highly sensitive information.

30.    By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Defendants assumed equitable and legal duties to safeguard Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

31.    Despite these duties, Defendants failed to implement reasonable data security measures to protect Plaintiff's and Class Members' Private Information and ultimately allowed threat actors to breach their computer systems and exfiltrate Plaintiff's and Class Members' Private Information stored therein.

THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE

32.    Defendants understood that the Private Information they collect is highly sensitive and of significant value to those who would use it for wrongful purposes.

33.    Defendants also knew that a breach of their computer systems, and exposure of the Private Information stored therein, would result in the increased risk

of identity theft and fraud against the individuals whose Private Information was compromised.

34.    These risks are not theoretical; in recent years, numerous high-profile breaches have occurred at business such as Equifax, Facebook, Yahoo, Marriott, Anthem, and many others.

35.    Private Information has considerable value and constitutes an enticing and well-known target to hackers. Hackers can easily sell stolen data as there has been "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[7]

36.    As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.[8] The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individual, businesses, and government entities in the U.S. In 2023 alone, there were 6,077 recorded breaches exposing more than 17 billion records - representing a 19.8%

---

[7] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/ (last visited October 22, 2025).
[8] https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed October 22, 2025).

year-over-year increase in the United States compared to 2022.[9] This trend is mirrored in identity theft complaints, which nearly doubled over a four-year span—from 2.9 million reports in 2017 to 5.7 million in 2021.[10]

37.    Indeed, a 2022 poll of security executives predicted an increase in attacks over the next two years from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[11]

38.    In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, 2024 had the second-highest number of data compromises in the U.S. in a single year since such instances began being tracked in 2005.[12]

---

[9] Flashpoint, *2024 Global Threat Intelligence Report*, (Feb. 29, 2024), https://go.flashpoint.io/ 2024-global-threat-intelligence-report-download (last visited October 22, 2025).

[10] Insurance Information Institute, *Facts & Statistics: Identity Theft and Cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited October 22, 2025).

[11] Chuck Brooks, *Alarming Cyber Statistics For Mid-Year 2022 That You Need to Know*, Forbes (June 3, 2022), https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year-2022-that-you-need-to-know/?sh=176bb6887864 (last accessed October 22, 2025).

[12] *Insurance Information Institute, Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-

39.    The ramifications of Defendants' failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[13]

40.    Even if stolen Private Information does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the

---

identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20, (last visited October 22, 2025).

[13] U.S. Gov't Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/new.items/d07737.pdf, (last accessed October 22, 2025).

likelihood that a victim will be deceived into providing the criminal with additional information.

41.    The specific types of personal data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and other Class Members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

42.    **Social Security Numbers**—Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Social Security Numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

43.    Indeed, the Social Security Administration warns that the process of replacing a Social Security Number is a difficult one that creates other types of problems, and that it will not be a complete remedy for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other

personal information, such as your name and address, remains the same.

If you receive a new Social Security Number, you should not be able to use the old number anymore.

For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.[14]

44.     Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit - among other services. Often social security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes Social Security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

45.     Based on the value of Plaintiff's and Class Members' PII to cybercriminals, Defendants knew or should have known the importance of safeguarding the PII entrusted to them and of the foreseeable consequences if their data security systems were breached. Defendants failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

---

[14] *Identify Theft and Your Social Security Numbers*, Social Security Admin. (June 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed October 22, 2025).

**DEFENDANTS BREACHED THEIR DUTY TO PROTECT PLAINTIFF'S AND CLASS MEMBERS' PRIVATE INFORMATION**

46.    On or about August 22, 2025, AppFolio became aware of a "security incident" affecting Salesloft which allowed unauthorized access to records in AppFolio's hosted CRM system.[15] Following the discovery of the incident, AppFolio began an investigation to discover the scope of the suspicious activity.[16]

47.    AppFolio's investigation confirmed that between August 8, 2025 and August 18, 2025, an unauthorized third-party had gained access to its CRM system and successfully exfiltrated Private Information stored therein. The Private Information exfiltrated in the Data Breach includes individuals, names, addresses, dates of birth, and Social Security Numbers.

48.    On or around October 7, 2025, nearly two months after the Data Breach began, AppFolio reported the Data Breach to the Office of the Texas Attorney General, indicating the Data Breach compromised the Private Information of 5,056 Texas residents.[17]

49.    Not until around October 6, 2025, roughly two months after it claims to have discovered the Data Breach, did AppFolio begin sending the Notice to

---

[15]    *See* Exhibit A.

[16]    *Id.*

[17]    *Data Breach Notifications*, Office of the Texas Attorney General, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last visited October 22, 2025).

persons whose PII it confirmed was potentially compromised because of the Data Breach. The Notice provided basic details of the Data Breach and AppFolio's recommended next steps.

50.     The Notice included, *inter alia*, an explanation that AppFolio had learned of the Data Breach on August 22, 2025, and had taken steps to respond. But the Notice lacked sufficient information on how the breach occurred, what safeguards have been taken since then to safeguard further attacks, and/or where the information hacked exists today.

51.     Based on AppFolio's announcement of the Data Breach the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) the PII of Plaintiff and the Class Members and that the cybercriminals were successful in exfiltrating sensitive information from Defendants' systems.

52.     All in all, the Private Information of approximately 72,400 individuals was compromised in the Data Breach.

53.     The Data Breach occurred as a direct result of Defendants' failure to implement and follow basic security procedures to protect their current and former customers' Private Information that they had collected and stored.

## DEFENDANTS FAILED TO COMPLY WITH FTC GUIDELINES

54.     Defendants are prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

55.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[18]

56.     Among other guidance, the FTC recommends the following cybersecurity guidelines for businesses in order to protect sensitive information in their systems:[19]

  a.  Identify all connections to the computers where sensitive information is stored;

  b.  Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

---

[18] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed October 22, 2025).
[19] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed October 22, 2025).

c.  Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business;

d.  Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine;

e.  Pay particular attention to the security of their web applications - the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks;

f.  Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet;

g.  Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls -settings that determine which devices and traffic get through the firewall - to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

h.  Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

i.  Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are

17

being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

57.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[20]

58.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

59.    Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to their customers' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

60.    Defendants were at all times fully aware of their obligations to protect the PII of its customers given the reams of PII that they had access. Defendants were

---

[20] *Id.*

also aware of the significant repercussions that would result from a failure to properly secure the Private Information they maintained.

**DEFENDANTS' FAILURE TO PREVENT, IDENTIFY, AND TIMELY REPORT THE DATA BREACH**

61.     AppFolio admits that an unauthorized third-party accessed its information technology system via Salesloft's system and that Defendants discovered this unauthorized access on or about August 22, 2025.[21]

62.     Defendants failed to take necessary precautions and failed to employ adequate measures necessary to protect their computer systems against unauthorized access and keep Plaintiff's and Class Members' Private Information secure.

63.     The Private Information that Defendants allowed to be exposed in the Data Breach is the type of private information that Defendants knew or should have known would be the target of cyberattacks.

64.     Despite their own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices[22], Defendants failed

---

[21] *Data Breach Notification*, Office of the Maine Attorney General. https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/558113e2-5f95-4f04-ae80-27f404d3ac47.html (last visited October 22, 2025).

[22] Protecting Personal Information: A Guide for Business, Fed. Trade Comm'n (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited October 22, 2025).

to disclose that their systems and security practices were inadequate to reasonably safeguard individuals' Private Information.

65.    The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[23] Immediate notification to individuals impacted by a data breach is critical so that those impacted can take measures to protect themselves.

66.    Here, AppFolio inexcusably waited for months after the Data Breach occurred to notify impacted individuals.

67.    Plaintiff and Class Members remain in the dark regarding what data was stolen, the particular malware used, and what steps are being taken to secure their PII in the future. Thus, Plaintiff and Class Members are left to speculate as to where their PII ended up, who has used it, and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Data Breach and how Defendants intend to enhance their information security systems and monitoring capabilities to prevent further breaches.

---

[23] *Id.*

**PLAINTIFF AND CLASS MEMBERS SUFFERED DAMAGES**

68.     The ramifications of Defendants' failure to keep Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

69.     Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives as a result of Defendants' conduct. Further, the value of Plaintiff's and Class Members' Private Information has been diminished by its exposure in the Data Breach.

70.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[24]  "Fullz" packages, which includes "extra information about the legitimate credit card owner in case" the scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[25]

---

[24] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited October 22, 2025).

[25] *Id.*

71.    Plaintiff and Class Members are at substantial increased risk of suffering identity theft and fraud or misuse of their Private Information as a result of the Data Breach. From a recent study, 28% of individuals affected by a data breach become victims of identity fraud - this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[26]

72.    Further, Plaintiff and Class Members have incurred and will incur out of pocket costs for protective measures, such as identity theft protection, credit monitoring, credit report fees, credit freeze fees, and similar costs related to the Data Breach.

73.    Besides the monetary damage sustained in the event of identity theft, consumers may have to spend hours trying to resolve identity theft issues. For example, the FTC estimates that it takes consumers an average of 200 hours of work over approximately six months to recover from identity theft.[27]

74.    Plaintiff and Class Members are also at a continued risk because their information remains in Defendants' systems, which the Data Breach showed are

---

[26] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KnowBe4, https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last accessed October 22, 2025).
[27] Kathryn Parkman, *How to Report identity Theft*, ConsumerAffairs (Feb. 17, 2022), https://www.consumeraffairs.com/finance/how-to-report-identity-theft.html (last accessed October 22, 2025).

susceptible to compromise and attack and are subject to further attack so long as Defendants fail to take necessary and appropriate security and training measures to protect the Private Information in its possession.

75.    Plaintiff and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their Private Information to strangers.

76.    As a result of Defendants failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer injuries, including out of pocket expenses; loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Private Information; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their Private Information being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their Private Information; and continued risk to Plaintiff's and the Class Members' Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as AppFolio fails to undertake appropriate and adequate measures to protect the Private Information entrusted to it.

77.    Furthermore, AppFolio has offered a subscription for identity theft monitoring and identity theft protection through Cyberscout for an indeterminate

amount of time. Any limitation is inadequate when the victims will likely face many years of identity theft.

78.    Moreover, Defendant's credit monitoring offer and advice to Plaintiff and Class Members squarely place the burden on Plaintiff and Class Members, rather than on Defendants, to monitor and report suspicious activities to law enforcement. In other words, Defendants expect Plaintiff and Class Members to protect themselves from Defendants tortious acts resulting from the Data Breach. Rather than automatically enrolling Plaintiff and Class Members in credit monitoring services upon discovery of the Data Breach, Defendants merely sent instructions to Plaintiff and Class Members about actions they could affirmatively take to protect themselves.

79.    These services are wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

## CLASS ALLEGATIONS

80.    Plaintiff brings this class action on behalf of himself and all other individuals who are similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

81.    Plaintiff seeks to represent a class of persons to be defined as follows:

All individuals in the United States whose Private Information was compromised in the Data Breach (the "Class").

82.    Excluded from the Class are Defendants, their subsidiaries and affiliates, officers and directors, any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

83.    This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when he moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

84.    **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are at minimum, tens of thousands of members of the Class described above. AppFolio has acknowledged that the Data Breach compromised the Private Information of over 5,000 individuals in the state of Texas alone.[28] The exact size of the Class and the identities of the individual members are identifiable through

---

[28] *Data Breach Notifications*, Office of the Texas Attorney General, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage.

Defendants' records, including but not limited to the files implicated in the Data Breach.

85.    **Commonality:** This action involved questions of law and fact common to the Class. Such common questions include but are not limited to:

      a.    Whether Defendants had a duty to protect the Private Information of Plaintiff and Class Members;

      b.    Whether Defendants were negligent in collecting and storing Plaintiff's and Class Members' Private Information, and breached their duties thereby;

      c.    Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' wrongful conduct; and

      d.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

86.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class were all customers of AppFolio, and each had their Private Information exposed and/or accessed by an unauthorized third-party.

87.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members

of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

88.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

89.    **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendants breached their

duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

90. **Injunctive Relief:** Defendants have acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

91. **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendants' books and records.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

92. Plaintiff re-alleges allegations in Paragraphs 1 through 91 as if fully set forth herein.

93. Plaintiff and Class Members provided their Private Information to AppFolio as a condition of obtaining services from Defendants, who then entrusted that Private Information to Salesloft.

94. Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in securing, safeguarding, storing, and protecting the PII collected from them from being compromised, lost, stolen, accessed and misused by unauthorized parties. This duty includes, among other things, designing,

maintaining, overseeing, and testing Defendants' security systems to ensure that PII in Defendants' possession was adequately secured and protected

95.    Defendants had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

96.    Defendants owed a duty of care to Plaintiff and Class Members to provide reasonable security, consistent with industry standards, to ensure that their systems and networks adequately protected their Private Information.

97.    Defendants had a special relationship with Plaintiff and Class Members. Plaintiff and Class Members' willingness to entrust Defendants with their Private Information as a condition of receiving resources was predicated on the understanding that Defendants would take adequate security precautions to protect their PII.

98.    By assuming the responsibility to collect and store this data, Defendants had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

99.    Plaintiff and members of the Class directly and indirectly entrusted Defendants with their PII with the understanding that Defendants would safeguard their information.

100.   Defendants' conduct also created a foreseeable risk of harm to Plaintiff and Class Members by failing to: (1) secure their systems and exercise adequate oversight of its data security protocols; (2) ensure compliance with industry standard data security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent the Data Breach.

101.   Defendants knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of their systems, and the importance of adequate security. Defendants should have been aware of numerous, well-publicized data breaches in the months and years preceding the Data Breach.

102.   Defendants breached their common law duty to act with reasonable care in collecting and storing the Private Information of its customers, which exists independently from any contractual obligations between the parties. Specifically, Defendants breached their common law, statutory, and other duties to Plaintiff and Class Members in numerous ways, including by:

a.   failing to adopt reasonable data security measures, practices, and protocols;

b.   failing to implement data security systems, practices, and protocols sufficient to protect Plaintiff's and Class Members' PII;

c.   storing former Plaintiff's and Class Members' PII longer than reasonably necessary;

d.   failing to comply with industry-standard data security measures; and

e.   failing to timely disclose critical information regarding the nature of the Data Breach.

103.   Defendants' failure to implement and maintain adequate data security measures to protect Plaintiff's and Class Members' Private Information created conditions conducive to a foreseeable, intentional criminal act in the form of the Data Breach. Plaintiff and Class Members did not contribute to the Data Breach or the subsequent misuse of their Private Information.

104.   Defendants owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

105.   Moreover, Defendants had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

106.   Defendants had and continue to have duties to adequately disclose that the Private Information of Plaintiff and Class Members within Defendants' possession might have been compromised, how it was compromised, and precisely

the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

107.   Defendants' conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

108.   AppFolio has acknowledged that the Private Information of Plaintiff and Class Members was disclosed to unauthorized third persons as a result of the Data Breach.

109.   Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

110.   But for Defendants' wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

111.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have and will suffer damages including, but not limited to: (i) the loss of value of their Private Information and loss of opportunity to determine for

themselves how their PII is used; (ii) the publication and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as AppFolio fails to undertake appropriate and adequate measures to protect it; and, (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised for the rest of their lives.

112.   But for Defendants' wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

113.   There is a close causal connection between Defendants' failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class

Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

114.   As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

115.   As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

116.   In addition, Defendants had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

117.   Defendants' violation of federal statutes, including the FTCA, constitutes negligence *per se*.

118.   Additionally, as a direct and proximate result of Defendants' negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession.

119.   Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

### COUNT II
### <u>Breach of Implied Contract</u>
### (On Behalf of Plaintiff and the Class)

120.   Plaintiff re-alleges allegations in Paragraphs 1 through 91 as if fully set forth herein.

35

121.   In connection with obtaining services from AppFolio, Plaintiff and Class Members entered into implied contracts with AppFolio.

122.   Plaintiff and Class Members were required to deliver their Private Information to AppFolio as part of the process of obtaining services from AppFolio.

123.   AppFolio provided Plaintiff's and Class Members' Private Information to Salesloft in connection with Salesloft providing certain services to AppFolio.

124.   AppFolio required Class Members to provide their Private Information in order to obtain its services. Plaintiff and Class Members accepted AppFolio's offers and provided their Private Information to AppFolio, and in turn to Salesloft.

125.   Defendants accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

126.   When Plaintiff and Class Members provided their PII to AppFolio, either directly or indirectly, as a pre-condition for services, they entered into implied contracts with AppFolio.

127.   Pursuant to these implied contracts, in exchange for the consideration and PII provided by Plaintiff and Class Members, AppFolio agreed to, among other things, and Plaintiffs and Class Members understood that AppFolio would: (1) provide products and/or services to Plaintiffs and Class Members; (2) implement reasonable measures to protect the security and confidentiality of Plaintiff's and

Class Members' PII; and (3) protect Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards

128.   In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations and were consistent with industry standards.

129.   Implicit in the agreement between Plaintiff and Class Members and Defendants to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

130.   The protection of PII was a material term of the implied contracts between Plaintiffs and Class Members, on the one hand, and Defendants, on the other hand. Indeed, Defendants recognized its duty to provide adequate data security and ensure the privacy of its customers' PII with its practice of providing a privacy policy on its website.

131.    Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendants with their PII.

132.    Defendants breached their obligations under their implied contracts with Plaintiff and Class Members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class Members' PII in a manner that complies with applicable laws, regulations, and industry standards

133.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendants, on the other, is demonstrated by their conduct and course of dealing.

134.    On information and belief, at all relevant times, AppFolio promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

135.    On information and belief, at all relevant times, AppFolio promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information to other business entities wherein such entities would safely secure their Private Information.

136.  On information and belief, Defendants further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

137.  Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of the implied contract between them and Defendants to keep their information reasonably secure.

138.  Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

139.  Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendants.

140.  Defendants breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that Private Information was compromised as a result of the Data Breach

141.  Defendants breached the implied contracts by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff

and Class Members and continued acceptance of Private Information and storage of other personal information after Defendants knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

142.   Defendants' breach of their obligations of their implied contracts with Plaintiff and Class Members directly resulted in the Data Breach and the injuries that Plaintiff and Class Members have suffered from the Data Breach.

143.   Plaintiff and Class Members suffered by virtue of Defendants' breach of their implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft - risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; (vi) they have lost time and incurred expenses, and will incur future costs to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) they have overpaid for the services they received without adequate data security.

144.   Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

145. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *e.g.*, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

### COUNT III
### BREACH OF THIRD PARTY BENEFICIARY CONTRACT
**(On Behalf of Plaintiff and the Class)**

146. Plaintiff re-alleges allegations in Paragraphs 1 through 91 as if fully set forth herein.

147. Salesloft entered into uniform written contracts with its clients, including AppFolio, to provide a software platform and other related services in connection with, among other things, sales and customer relationship management.

148. Pursuant to the uniform contract between Defendants, Salesloft received, among other things, Plaintiff's and Class Members Private information from AppFolio in exchange for AppFolio's access to Salesloft's software platform and related services.

149. These uniform contracts contained material terms requiring Salesloft and AppFolio to use reasonable data security sufficient to safeguard Plaintiff's and Class Members' Private Information.

150.  Defendants knew that Plaintiff and the Class Members were intended beneficiaries of the contracts between Salesloft and AppFolio.

151.  Defendants also knew that if they breached their contractual obligation to safeguard the Private Information with which they had been entrusted, Plaintiff and Class Members would be harmed.

152.  Defendants breached these contracts with one another by failing to use reasonable data security measures sufficient to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

153.  As a direct and proximate result of Defendants' breaches of these contracts, Plaintiff and Class Members have suffered and will continue to suffer injuries as set forth herein, and are entitled to damages sufficient to compensate for the losses they sustained as a direct result thereof.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

154.  Plaintiff re-alleges allegations in Paragraphs 1 through 91 as if fully set forth herein.

155.  This count is plead in the alternative to the breach of implied contract count above.

156.  By its wrongful acts and omissions described herein, Defendants have obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

157.   Plaintiff and Class Members conferred a benefit on Defendants, whereby they provided their Private Information to Defendants in connection with receiving certain services.

158.   Defendants prior to and at the time Plaintiff and Class Members entrusted them with their PII, caused Plaintiff and Class Members to reasonably believe that they would keep that Private Information secure.

159.   The monies Defendants were paid in their ordinary course of business included a premium for Defendants' cybersecurity obligations and were supposed to be used by Defendants, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiff's and Class Members' Private Information.

160.   Defendants knew that Plaintiff and Class Members conferred a benefit upon them and accepted and retained that benefit by accepting and retaining the Private Information entrusted to them. Defendants profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

161.   Defendants failed to disclose facts pertaining to their substandard information systems, or defects and vulnerabilities therein before Plaintiff and Class Members made their decisions to provide Defendants with their Private Information.

162.    Defendants enriched themselves by hoarding the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants calculated to increase their own profit at the expense of Plaintiff and Class Members by utilizing cheap, ineffective security measures and diverting those funds to their own personal use. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decision to prioritize their own profits over the requisite security and the safety of their Private Information.

163.    Defendants failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and as a result, Defendants were overpaid.

164.    Under principles of equity and good conscience, Defendants should not be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon them.

165.    Plaintiff and Class Members have no adequate remedy at law.

166.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences

of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

167.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

## COUNT V
## DECLARATORY JUDGMENT
### (On Behalf of Plaintiff and the Class)

168.    Plaintiff re-alleges allegations in Paragraphs 1 through 91 as if fully set forth herein.

169.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority

to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

170.   An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' Private Information and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendants' data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his PII and remains at imminent risk that further compromises of his PII will occur in the future.

171.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

> a.    Defendants owe a legal duty to secure customers' Private Information and to timely notify impacted individuals of a data breach under the common law, and various state statutes; and
>
> b.    Defendants continue to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

172.    This Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with law and industry standards to protect Private Information in AppFolio's data network.

173.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Defendants. The risk of another such breach is real, immediate, and substantial. If another breach of Defendants occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and he will be forced to bring multiple lawsuits to rectify the same conduct.

174.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

175.    Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Defendants, thus eliminating the additional injuries that would result to Plaintiff and customers whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order certifying this action as a class action, appointing Plaintiff as class representatives for the Class, and appointing his counsel to represent the Class;

B.     For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.     For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to customer data collection, storage, and safety, and to disclose with specificity the types of PII compromised as a result of the Data Breach;

D.     For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

E.     Ordering Defendants to pay for not less than ten years of credit monitoring services for Plaintiff and Class Members;

F.     For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.     For an award of punitive damages, as allowable by law;

H.     For an award of attorneys' fees and costs, and any other expense, including expert witness fees pursuant to O.C.G.A. Section 13-6-11, and as otherwise allowed by law;

I.     Pre- and post-judgment interest on any amounts awarded; and

J.     Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 24, 2025                    Respectfully submitted,

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
GA Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA  30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

J. Cameron Tribble
Georgia Bar No. 754759
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Telephone: 770-227-6375
Facsimile: 770-227-6373
ctribble@barneslawgroup.com

Gerald D. Wells, III*
Stephen E. Connolly*
**LYNCH CARPENTER, LLP**

49

1760 Market Street, Suite 600
Philadelphia, PA 19103
T: 267-609-6910
F: 267-609-6955
jerry@lcllp.com
steve@lcllp.com

***Attorneys for Plaintiff and the
Proposed Class***

*\* pro hac motion forthcoming*